IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JACQUELINE P. MATTHIES,

    Plaintiff,

No. CIV S-05-0820 RRB GGH

vs.

MICHAEL J. ASTRUE,[1]
Commissioner of
Social Security,

FINDINGS AND RECOMMENDATIONS

    Defendant.

_____/

    Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"). For the reasons that follow, this court recommends this matter be remanded for further consideration of plaintiff's nonexertional limitations and subjective complaints and to obtain the testimony of a vocational expert.

\\\\\

\\\\\

---

[1] Michael J. Astrue became Commissioner on February 12, 2007. Accordingly, he should be substituted as defendant in this suit. Fed. R. Civ. P. 25(d)(1). No further action need be taken by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

1

BACKGROUND

Plaintiff, born May 16, 1955, applied for disability benefits on November 7, 2002. (Tr. at 48.) Plaintiff alleged she became unable to work on April 16, 2002, due to "fibromyalgia, degenerative disc disease in cervical spine-lumbar spine with arthritis and chronic lower back pain, fibroids and rt. ovarian cyst, depression, PTSD [post-traumatic stress disorder], axity [sic], tremors, blurred vision," headaches, insomnia, and high cholesterol. (Id. at 55.) In a decision dated April 28, 2004, Administrative Law Judge ("ALJ") Antonio Acevedo-Torres determined that plaintiff was not disabled.[2] The ALJ made the following findings:

> 1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.

---

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. § 423(d)(1)(a). A five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287 (1987). The following summarizes the sequential evaluation:
> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828, n. 5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146, n.5, 107 S.Ct. at 2294, n. 5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant has an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations 20 C.F.R. § 404.1520(b).

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

6. The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 C.F.R. § 404.1527).

7. The claimant has the residual functional capacity for a light level of exertion. She can lift 20 pounds occasionally and 10 pounds frequently and sit, stand, and walk six hours during a workday. She is limited to simple unskilled work.

8. The claimant is unable to perform any of her past relevant work (20 C.F.R. § 404.1565).

9. The claimant is a younger individual (20 C.F.R. § 404.1563).

10. The claimant has a "high school (or high school equivalent) education" (20 C.F.R. § 404.1564).

11. The claimant does not have transferable skills from skilled work previously performed as described in the body of the decision (20 C.F.R. § 404.1568).

12. The claimant has the residual functional capacity to perform substantially all of the full range of light work (20 C.F.R. § 404.1567).

13. Based on an exertional capacity for light work, and the claimant's age, education, and work experience, the Medical-Vocational Rule 202.20-.22, Appendix 2, Subpart P, Regulations No. 4 would direct a conclusion of "not disabled."

14. The claimant's capacity for light work is substantially intact and has not been compromised by any nonexertional limitations. Accordingly, using the above-cited rule(s) as a framework for decision-making, the claimant is not disabled.

15. The claimant was not under a disability as defined in the Social Security Act, at any time through the date of this decision (20 C.F.R. § 404. 1520(f)).

(Tr. at 25-26).

\\\\\

3

ISSUES PRESENTED

Plaintiff contends the ALJ erred by: (A) rejecting the opinions of the state agency examiners; (B) failing to credit the opinion of plaintiff's treating physician; (C) failing to consider plaintiff's nonexertional mental and physical impairments; (D) finding plaintiff not disabled despite finding she could engage in work activities only six hours a day; (E) failing to consider the effect of plaintiff's subjective complaints; (F) failing to consider the lay testimony of plaintiff's husband; and (G) relying on the medical-vocational guidelines without obtaining the testimony of a vocational expert.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir.1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 402, 91 S. Ct. 1420 (1971), quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59 S. Ct. 206 (1938). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).

ANALYSIS

   A. <u>Opinions of State Agency Examiners</u>

Plaintiff contends the ALJ improperly rejected selected portions of the opinions of consultative examiners Dr. Barbara Griffiths and Dr. Peter Vander Veer. For the following reasons, this contention is without merit as to Dr. Vander Veer but meritorious as to Dr.

Griffiths.

### 1. Dr. Vander Veer

Plaintiff contends the ALJ misstated the opinion of psychiatrist Dr. Vander Veer regarding plaintiff's ability to concentrate and therefore failed to provide specific and legitimate reasons for rejecting the psychiatrist's opinion. Plaintiff asserts, "The ALJ stated that Dr. Vander Veer opined as to 'mild problems with concentration' [when] [i]n fact Dr. Vander Veer found that Ms. Matthies had 'difficulty in maintaining concentration and pace,' which is vastly different than mild problems." Plaintiff's Memorandum, at p. 14. However, review of Dr. Vander Veer's report (Tr. at 258-63) demonstrates it was accurately represented by the ALJ as describing "mild problems in concentration" (Tr. at 23). In identifying plaintiff's "Current Manifestations," Dr. Vander Veer stated, "[s]he demonstrated mild problems with concentration which I suspect may be related to medication, although I cannot rule out pain as an aspect." (Tr. at 263). This conclusion is consistent with Dr. Vander Veer's assessment upon interviewing plaintiff.[3] The only arguable discrepancy within the opinion is set forth in Dr. Vander Veer's concluding "Medical Source Statement and Functional Capacity," wherein he states, without further explanation, "The claimant past difficulty in maintaining concentration and pace [sic]." Despite the inherent ambiguity of this statement, there is nothing in Dr. Vander Veer's report to suggest that plaintiff's "difficulty," whether past or present, includes anything other than "mild problems." Plaintiff's challenge to the ALJ's construction of Dr. Vander Veer's opinion is unsubstantiated.

\\\\\

---

[3] In recounting plaintiff's history, Dr. Vander Veer stated (Tr. at 259): "She has also noted that her recent memory is not a[s] sharp as it was. She will forget what she went into a room to obtain. This has been going on for at least a year. She also forgets dates and names. To what extent this deficit is related to the medication and to what extent it is part of a pain syndrome and/or depression is not clear. Her husband says, at least earlier on, she seemed a bit sedated from the medication. She did not appear sedated at the interview; she was alert and her speech was not slurred."

2. <u>Dr. Griffiths</u>

Plaintiff contends correctly that the ALJ improperly rejected Dr. Griffiths' finding that plaintiff has manipulative restrictions attributable to hand tremor and fibromyalgia, a determination consistent with the specific findings of treating physican Dr. Paul Sobelman and general findings of treating neurologist Dr. Rajiv Pathak.

The ALJ expressly relied on Dr. Griffiths' assessment of plaintiff's residual functional capacity with the exception of manipulative restrictions.  With respect to the latter, the ALJ recounted Dr. Griffiths' findings, inter alia, of "fibromyalgia with multiple tender points on examination consistent with this diagnosis," and  "fine hand intentional tremor,[4] etiliogy not determined," resulting in limited "'fine hand manipulative tasks, such as gripping, grasping, and working on the computer.  These activities were limited to 15-20 minutes [sic] intervals with a short five minute break to stretch due to her fine hand intentional tremor and her epicondylar [elbow] fibromyalgic points.'" (Tr. at 22, paraphrasing Tr. 287[5]).  In rejecting this assessment, the ALJ explained,  "The undersigned concurs in all respects with Dr. Griffiths' opinion except that I cannot accord much weight to the manipulative limitations since this part of the doctor's opinion is conclusory and not substantiated by the medical findings of record in the doctor's evaluation or elsewhere in the record.  The doctor's examination of the claimant's shoulders, elbows, wrists, and hands, were normal except for the tremor in the hands." (Tr. at 23).

The Commissioner responds, accurately, that an ALJ may properly rely upon only selected portions of a medical opinion while rejecting other parts.  See, e.g., <u>Magallanes v. Bowen</u>, 881 F.2d 747, 753 (9th Cir. 1989) (ALJ's supported reliance on selected portions of

---

[4] An "intentional tremor" "results from the oscillation of a limb as it approaches a target" and "occurs in multiple sclerosis or other cerebellar outflow diseases." Merck Manual, 16th Ed. (1992), p. 1491.

[5] Dr. Griffiths found (Tr. 287): "Fine hand manipulative tasks, such as gripping, grasping, and working on the computer, should be limited to 15 to 20 minute intervals with a short 5 minute breaks [sic] to stretch because of her fine hand intentional tremor and her epicondylar fibromyalgic points."

6

conflicting opinion constitutes substantial evidence). However, such selective reliance must be consistent with the medical record as a whole. See, e.g., Edlund v. Massanari, 253 F.3d 1152, 1159 (9th Cir. 2001) (ALJ cannot reject portion of medical report that is clearly reliable). Here, the ALJ ignored entirely that Dr. Griffths' findings are consistent with (although less restrictive than) the findings of plaintiff's treating physician, Dr. Paul Sobelman. Based upon his treatment records noting plaintiff's "tremor R arm" (Tr. at 173), and "hands hurt in AM – '-' strength, drops things" (Tr. at 162)), Dr. Sobelman opined that plaintiff has "significant limitations in doing repetitive reaching, handling or fingering" (Tr. at 311), and opined that in an 8-hour work day plaintiff can finely manipulate objects a total of 4 hours, and grasp, turn and twist objects a total of 1 hour. (Tr. at 312).

It is undisputed that plaintiff has a bilateral hand tremor. In addition to the findings of Drs. Sobelman and Griffiths, plaintiff's hand tremor was noted by plaintiff's treating neurologist, Dr. Rajiv Pathak (see, e g., Tr. at 255 ("She has mild, fine tremor in both arms" ), Tr. at 250 ("history of tremor and dizziness . . . helped by Klonopin"), Tr. at 246 ("She has been having tingling and numbness affecting both hands")), who found plaintiff's symptoms sufficiently persistent to refer plaintiff for a brain MRI (see Tr. at 256 ("MRI brain to rule out multiple sclerosis given that she has tremors, dizziness, forgetfulness, and reflex assymetry")). Plaintiff's tremor was also noted by her physical therapist (see, e.g., Tr. at 201 ("'trembling' of right upper extremity;" "mild R hand tremor > L"). Most significantly, the ALJ found that plaintiff's "fine hand intentional tremor" was a severe impairment supported by the medical evidence. (Tr. at 22).

The finding of manipulative restrictions is uncontradicted by plaintiff's examining physicians. There is no basis for the ALJ to reject these limitations, supported by the weight of the medical evidence, because "inconsistent with objective findings." The only contradictory evidence is the form opinion of a nonexamining State Agency Physician. (Tr. at 299). The ALJ "cannot reach a conclusion first, and then attempt to justify it by ignoring

competent evidence in the record that suggests an opposite result." Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984) (citation omitted). Because the ALJ failed to provide clear and convincing reasons for rejecting the consistent findings of both plaintiff's treating and examining physicians, this case must be remanded for further consideration of plaintiff's manipulative restrictions. See, e.g., Lester v. Chater, supra, 81 F.3d at 831 (ALJ may reject the uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons).

The ALJ's conclusion that plaintiff can perform the full range of unskilled light work must therefore be reversed. Although such work generally does "not require use of the fingers for fine activities to the extent required in much sedentary work" (SR 83-10), "[t]he functional capacity to perform the full range of light work includes the functional capacity to perform sedentary as well as light work" (20 C.F.R. Pt. 404, Subpt. P, App. 2 , Rule 202.00(a); 20 C.F.R. § 404.1567(b)), and "[m]ost unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions"(SSR 83-10).[6] Upon remand, the ALJ must reconcile the opinions of Drs. Griffiths and Sobelman to determine the nature and scope of plaintiff's manipulative restrictions, and then include these restrictions in hypothetical questions posed to a vocational expert. See, e.g., Widmark v. Barnhart, 454 F.3d 1063, 1070 (9th Cir. 2006) (vocational expert testimony required where claimant's thumb impairment restricted his ability to perform fine manipulation).

\\\\\

\\\\\

---

[6] The following Social Security Rulings are instructive. SSR 83-14 provides: "Unlike unskilled sedentary work, many unskilled light jobs do not entail fine use of the fingers. Rather, they require gross use of the hands to grasp, hold, and turn objects. Any limitation on these functional abilities must be considered very carefully to determine its impact on the size of the remaining occupational base of a person who is otherwise found functionally capable of light work." SSR 96-9p provides: "Most unskilled sedentary jobs require good use of both hands and the fingers; i.e., bilateral manual dexterity. Fine movements of small objects require use of the fingers; e.g., to pick or pinch. Most unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions."

B.  <u>Opinion of Plaintiff's Treating Physician</u>

Plaintiff contends the ALJ erred in rejecting the opinion of plaintiff's treating physician, Dr. Paul Sobelman.  Because the assessment of the plaintiff's nonexertional limitations are addressed in other contexts herein, this discussion is limited to Dr. Sobelman's exertional findings.  For the reasons that follow, the weight of the medical evidence supports the ALJ's rejection of Dr. Sobelman's finding that plaintiff cannot perform even sedentary work.

Dr. Sobelman opined that plaintiff can lift or carry no more than 10 pounds and can sit/stand/walk no more than 2 hours in an 8-hour workday (no more than 30 minutes consecutively), and requires the option of shifting positions at will and taking unscheduled breaks at least hourly for 15 to 30 minute periods.  (Tr. at 310-311).   The ALJ rejected this assessment because it "is conclusory and is not substantiated by the medical findings of record or the creditable opinions of examining and reviewing physicians" and because based on plaintiff's subjective complaints. (Tr. at 23).[7]

The ALJ found instead that plaintiff can perform light work, lifting 10 pounds frequently and 20 pounds occasionally, and "sit, stand, and walk six hours during a workday."[8]

---

[7] The ALJ reasoned (Tr. at 23):

> The functional capacities evaluation prepared in October 2003 by Paul Sobelman, M.D., the claimant's treating physician, finding that the claimant is limited to less than sedentary work capacity with very limited abilities in sitting, standing, lifting, and walking, cannot be credited.  This evaluation is largely based on the claimant's subjective complaints of back, shoulder, and neck pain, depression, and fatigue.  It is well established under the Social Security law that an administrative law judge may discount an examining physician's opinion when such relies largely on the claimant's subjective complaints.  Dr. Sobelman's opinion is conclusory and is not substantiated by the medical findings of record or the creditable opinions of examining and reviewing physicians.

[8] " Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she

9

Tr. 22, 24. These findings are supported by Dr. Griffiths' opinion that plaintiff "can carry up to 20 pounds occasionally and up to 5-10 pounds frequently. She can sit, stand, or walk 8 hours out of an 8-hour day if she is allowed to take breaks during the course of her work day to change her position from sitting to standing or standing to sitting." Tr. at 287. The ALJ expressly adopted Dr. Griffths' assessment, which is mainly consistent with that of the State Agency Physician that, in pertinent part, plaintiff can lift or carry 10 pounds frequently and 20 pounds occasionally, sit 6 hours, and stand or walk 6 hours in an 8-hour work day (Tr. at 297); this opinion was affirmed by another State Agency Physician upon reconsideration (Tr. at 308).

Accordingly, the court finds that substantial evidence supports the ALJ's finding plaintiff can perform the exertional demands of light work, subject to further analysis of the plaintiff's subjective complaints and nonexertional limitations. While a treating physician's opinion generally is accorded superior weight, if it is contradicted by a supported examining physician's opinion (different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, supra, 881 F.2d at 751.

C. Plaintiff's Nonexertional Mental and Physical Impairments

Plaintiff contends the ALJ erred in finding that plaintiff's capacity for light work "has not been compromised by any nonexertional limitations." (Tr. at 26). In addition to manipulative restrictions, plaintiff asserts the evidence demonstrates the following nonexertional limitations: (1) need for unscheduled breaks, as opined by Dr. Griffiths (Tr. at 287) and Dr. Sobelman (Tr. at 311); (2) need to sit/stand at will, as opined by Dr. Griffiths (Tr. at 287) and Dr. Sobelman (Tr. at 311); (3) difficulty maintaining concentration and pace, as opined by Dr. Vander Veer (Tr. at 263) and Dr. Sobelman (Tr. at 310); (4) history of chronic pain and fatigue, including side effects to medication, as evidenced throughout the record.

---

can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

Although the ALJ expressly adopted Dr. Griffiths findings "in all respects" with the exception of manipulative restrictions (Tr. at 23), he ignored Dr. Griffiths' finding that plaintiff can perform light work only "*if* she is allowed to take breaks during the course of her work day to change her position from sitting to standing or standing to sitting" (Tr. at 287 (emphasis added)). Consistently, Dr. Sobelman found that plaintiff requires a job that permits unscheduled breaks and shifting positions at will from sitting, standing and walking. (Tr. at 311). Only the nonexamining State Agency Physician, in a check-off report, opined that plaintiff need not alternate positions periodically and requires only normal breaks. (Tr. at 297). Not only are the detailed analyses of Drs. Griffiths and Sobelman more probative than the "check marks in boxes on a form" provided by the State Agency Physician, Murray v. Heckler, 722 F.2d 499, 501 (9th Cir. 1983), but the opinion of a nonexamining physician, without other evidence, is insufficient to reject the opinion of an examining or treating physician, Lester, 81 F.3d at 831. Thus, the ALJ may not, even implicitly, rely on the contradicted opinion of the State Agency Physician to reject the assessments of Dr. Griffiths and Dr. Sobelman that plaintiff requires unscheduled breaks and to sit or stand at will; the latter assessments must be credited and appropriate findings made on remand.

Plaintiff next contends the ALJ failed adequately to consider her alleged difficulties in maintaining concentration and pace. While general practitioner Dr. Sobelman opined that plaintiff's pain or other symptoms, including side effects to medication, *constantly* interfere with her ability to concentrate and attend to even simple work tasks (Tr. at 310), orthopedic examiner Dr. Griffiths noted only that plaintiff's complaint of poor short term memory deficits was "not appreciated on exam" (Tr. at 287). Dr. Griffiths' observation supports Dr. Vander Veer's opinion that plaintiff has only mild difficulties in maintaining concentration and pace which could be due to her depression, medication or pain symptoms. (Tr. at 263, 259). An ALJ may reject the contradicted opinion of a treating or examining physician for "specific and legitimate" reasons, Lester, 81 F.3d at 830, which include reliance on the opinion of another

11

examining physician which is based upon independent clinical findings, Andrews v. Shalala, 53 F.3d at 1041. Further, the ALJ is encouraged to "give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. § 404.1527(d)(5). Dr. Vander Veer also found that plaintiff has moderate limitations in tasks of daily living and is limited to the performance of simple work tasks. The ALJ properly credited all of Dr. Vander Veer's findings to conclude that plaintiff – despite past relevant skilled work experience as an accounting clerk and medical assistant/x-ray tech supervisor – can perform only unskilled work.[9]

In contrast, the record supports plaintiff's contention the ALJ inadequately considered her other complaints attributable to chronic pain, fatigue and side effects to medication. Although the ALJ found that plaintiff's severe impairments include "chronic low back pain, fibromyalgia [and] status post hysterectomy with abdominal pain" (Tr. at 22), he did not identify any symptoms associated with these conditions, reasoning "[s]uch allegations are greater than her condition would be expected to produce and are not substantiated by the medical findings of record or the creditable opinions of examining or reviewing physicians. It is difficult to accept the claimant's account of her debilitating functional limitations in view of her ability to sleep eight hours during the night, drive 40 hours a week, and obtain four hours of pain relief with medications." (Tr. at 24).

\\\\\

---

[9] The ALJ reasoned, "Unskilled work involves little or no judgement to do simple duties that can be learned on the job in a short period of time. This is in contrast to semi-skilled or skilled work which may require alertness, close attention, or coordination and dexterity to do repetitive tasks quickly (Social Security Ruling 83-10)." (Tr. at 24-25). SSR 85-15 defines unskilled work as follows: "The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base. This, in turn, would justify a finding of disability because even favorable age, education, or work experience will not offset such a severely limited occupational base."

The ALJ mischaracterized plaintiff's testimony. Plaintiff testified her pain "never goes completely away" but medication "does take the edge off . . . for about four hours" (Tr. at 318); that the medications take her pain from "at least a 9" (on an ascending scale of 1 to 10) to only a "7" (Tr. at 325); that she usually sleeps in two to three hour intervals during the night (Tr. at 318-319); and that she travels from her rural home to town once or twice a week but most of the time gets a ride "because driving is a real big problem, I pay for it the next day" (Tr. at 319-320). The ALJ not only failed to mention these qualifying statements but did not address the remainder of plaintiff's testimony concerning her subjective complaints of pain, fatigue, medications and limited daily activities.

"Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing. If an ALJ finds that a claimant's testimony relating to the intensity of [her] pain and other limitations is unreliable, the ALJ must make a credibility determination citing the reasons why the testimony is unpersuasive. The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." Morgan v. Apfel, 169 F.3d 595, 599 (9th Cir. 1999) (citations and internal quotations omitted). See also 20 C.F.R. § 404.1529, and Social Security Ruling 96-7p.[10]

---

[10] Social Security Regulation 96-7p sets forth specific considerations to be made by the administrative law judge:

> In recognition of the fact that an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, 20 C.F.R. §§ 404.1529(c) . . . describe[s] the kinds of evidence, including the factors below, that the adjudicator must consider in addition to the objective medical evidence when assessing the credibility of an individual's statements:
>
> 1. The individual's daily activities;
> 2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
> 3. Factors that precipitate and aggravate the symptoms;
> 4. The type, dosage, effectiveness, and side effects of any

13

There is no evidence of malingering in this case. Even the nonexamining State Agency Physician found plaintiff credible. (Tr. at 295). The ALJ's mischaracterization of plaintiff's testimony and overly general rationale for rejecting plaintiff's subjective complaints is neither clear nor convincing, particularly in light of the ALJ's own findings that plaintiff's severe impairments include fibromyalgia, chronic low back pain, and abdominal pain (Tr. at 22). It is significant, for example, that fibromyalgia is distinguished by subjective symptoms consistent with plaintiff's testimony. See Rollins v. Massanari, 261 F.3d 853, 855 (9th Cir. 2001), quoting Sarchet v. Chater, 78 F.3d 305, 306 (7th Cir.1996) (fibromyalgia distinguished by "' "pain all over," fatigue, disturbed sleep, stiffness, and . . . multiple tender spots.'"). On remand, the ALJ must fully examine any nonexertional limitations associated with plaintiff's complaints of chronic pain, fatigue and side effects to medication.

D. The ALJ's Duration Finding

Plaintiff contends the ALJ's finding that plaintiff can "sit, stand, and walk six hours during a workday" (Tr. at 22), necessarily requires a finding that plaintiff is disabled, because the ability to perform substantial gainful activity requires the capacity to work eight hours a day, citing Willis v. Callahan, 979 F. Supp. 1299, 1305 (D.Ore.1997) ("once a claimant has stopped working, she is considered disabled if she is only able to perform part-time work") (citations omitted). Viewing the ALJ's opinion in its entirety, the only logical inference to be drawn is that the ALJ found plaintiff could, in any given work day, sit up to 6 hours and stand/walk up to 6 hours, or any combination of these totaling 8 hours a day. This contention is

---

        medication the individual takes or has taken to alleviate pain or other symptoms;
5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

without merit.

    E. Plaintiff's Subjective Complaints

Plaintiff contends the ALJ failed adequately to consider her subjective complaints of pain and limitations. This meritorious contention is addressed supra, and requires remand for reconsideration of plaintiff's subjective complaints and nonexertional limitations.

    F. Testimony of Plaintiff's Husband

Plaintiff contends correctly that the ALJ erred in failing to consider the testimony of her husband. The only reference made by the ALJ was, "The claimant's husband, Mr. Matthies, testified that he does most of the housework and related duties." (Tr. at 24).

Disregard of this testimony violates 20 C.F.R. § 404.1513(d)(4) (evidence from nonmedical sources). Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996). Where, as here, a claimant alleges pain or other symptoms that are not fully supported by the medical evidence, the ALJ "shall obtain detailed descriptions of daily activities by directing specific inquiries about the pain [or other symptoms] and its effects to . . . third parties who would be likely to have such knowledge." SSR 88-13.[11] Testimony from a lay witness who sees the claimant every day, generally a family member, is of particular value. Regennitter v. Commissioner of Social Security, 166 F.3d 1294, 1298 (9th Cir. 1999).

Plaintiff's husband, a psychiatric social worker, testified that he and plaintiff married in 1994. He stated that plaintiff's problems began in 2001 and have continued despite plaintiff obtaining regular and frequent medical treatment. Mr. Matthies testified that he and plaintiff used to camp and take walks but don't anymore. He testified that plaintiff takes two

---

[11] "SSR 88-13 states that where a claimant alleges pain or other symptoms that are 'not supported by medical evidence in the file, the adjudicator shall obtain detailed descriptions of daily activities by directing specific inquiries about the pain and its effects to . . . third parties who would be likely to have such knowledge.' SSR 88-13 (emphasis added). The ruling then requires the ALJ to give 'full consideration' to such evidence. Id. Having been directed to consider the testimony of lay witnesses in determining a claimant's disability, the ALJ can reject the testimony of lay witnesses only if he gives reasons germane to each witness whose testimony he rejects." Smolen v. Chater, 80 F.3d at 1288.

naps each day, each lasting from two to four hours; that she sleeps nine to ten hours a night; that plaintiff is forgetful; that she expresses pain upon activity; that plaintiff takes medication for depression and back pain; that she lifts very little, mostly books, does about a half hour of housework a day, and prepares half the meals; that Mr. Matthies and the couple's daughter do the rest of the housework and food preparation. (Tr. at 329-336).

The Commissioner argues the testimony of plaintiff's husband was cumulative of plaintiff's own testimony and therefore of little probative value. This argument lacks merit, particularly in light of the inadequate discrediting of plaintiff's subjective complaints. The testimony of lay witnesses who have the opportunity routinely to observe the claimant may not be discredited merely because it is consistent with the claimant's subjective complaints. Dodrill v. Shalala, 12 F. 3d 915, 918-919 (9th Cir. 1993). The ALJ can reject the testimony of a lay witness only if he gives reasons specific to the witness. Id., at 919.

G. Testimony of a Vocational Expert

The record demonstrates that plaintiff cannot perform the full range of light unskilled work. Application of the Medical-Vocational Guidelines ("grids") is therefore inappropriate, Tackett v. Apfel, 180 F.3d 1094 (9th Cir. 1999),[12] and the testimony of a

---

[12] In Tackett v. Apfel, supra, 180 F.3d at 1101-1102, the Ninth Circuit Court of Appeals explained (internal quotations omitted):

> The Commissioner's need for efficiency justifies use of the grids at step five where they completely and accurately represent a claimant's limitations. See id. [Heckler v. Campbell, 461 U.S. 458, 460-462, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983)] at 461. In other words, a claimant must be able to perform the full range of jobs in a given category, i.e., sedentary work, light work, or medium work. As explained in Desrosiers: "This court has recognized that significant non-exertional impairments, such as poor vision or inability to tolerate dust or gases, may make reliance on the grids inappropriate. We have also held that pain can be a non-exertional limitation. However, the fact that a non-exertional limitation is alleged does not automatically preclude application of the grids. The ALJ should first determine if a claimant's non-exertional limitations significantly limit the range of work permitted by his exertional limitations. . . . A non-exertional impairment, if sufficiently severe, may limit the claimant's functional capacity in ways not contemplated by the guidelines. In such a case, the guidelines would be inapplicable." 846 F.2d [573 (9th Cir. 1988)]at 577 (Pregerson, J., concurring) (internal

vocational expert is required on remand, Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989) (absent reliable evidence of a claimant's ability to perform specific jobs, the Commissioner must rely on the testimony of a vocational expert to meet his burden at step five of the sequential analysis).

CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment should be granted; defendant's motion for summary judgment should be denied.  This case should be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for reconsideration of plaintiff's subjective complaints and nonexertional impairments, reassessment of plaintiff's residual functional capacity, and a determination, based upon the testimony of a vocational expert, whether plaintiff can perform any jobs that exist in significant numbers in the national economy.

These findings and recommendations are submitted to the Honorable David F. Levi, the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within ten days after being served with these findings and recommendations, plaintiff may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: 7/3/07                                             /s/ Gregory G. Hollows
                                                          U. S. MAGISTRATE JUDGE

GGH5:Matt0820.ss

---

citations omitted).  The ALJ may rely on the grids alone to show the availability of jobs for the claimant "only when the grids accurately and completely describe the claimant's abilities and limitations." Jones v. Heckler, 760 F.2d 993, 998 (9th Cir.1985); see also, 20 C.F.R. pt. 404, subpt.  P, app. 2, rule 200(e); Desrosiers, 846 F.2d at 577.  Examples of non-exertional limitations are pain, postural limitations, or environmental limitations. See id.